IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ | ) | |
| FARAH THOROGOOD, | ) | |
| Plaintiff, | ) | Case No: |
| -against- | ) | |
| | **)** | **COMPLAINT** |
| | ) | |
| THE NEW YORK TIMES COMPANY, and | ) | |
| RUBY KAUR | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, Farah Thorogood, by and through her undersigned counsel, Kalmanson Law Office, PLLC, alleges the following upon personal knowledge as to her own acts, and upon information and belief as to all other matters:

## NATURE OF THE CASE

1.       This is an action for failure to accommodate a known disability, disability discrimination and failure to pay overtime wages.

2.       Plaintiff Farah Thorogood ("Ms. Thorogood" or "Plaintiff") was employed as a global mobility analyst by Defendant, The New York Times Company ("NYT") from December 2019 through June 2021.

3.       From nearly the outset of her employment with the NYT, Plaintiff found herself working in a toxic and mismanaged workplace, wherein she was routinely required to work 60-70 hours per week purely due to poorly organized and ineffectual internal systems.

4.       Despite Ms. Thorogood's repeated attempts to discuss better management of the workload and streamlining of internal processes with her supervisor, Defendant Ruby Kaur ("Ms.

Kaur"), and others, nothing changed. Defendants routinely rejected her attempts to improve the workings of the department.

5.    Ms. Thorogood was a non-exempt employee, and despite the many overtime hours that she worked, Ms. Kaur pressured Ms. Thorogood not submit all of the hours that she worked for payment.

6.    In fact, when Ms. Thorogood, in response to the pressure from Ms. Kaur, informed Ms. Kaur that she was consistently submitting fewer hours of overtime to NYT than the amount that she was actually working each week, Ms. Kaur condoned the practice, failed to correct the action, and failed to inform Ms. Thorogood that she should be paid for all hours worked.

7.    In addition to the unreasonable workload and hostility surrounding the logging of her overtime hours, Plaintiff was consistently subjected to a toxic work environment, wherein Ms. Kaur and members of Human Resources and Finance routinely bullied, belittled, ridiculed and dismissed her.

8.    It is against this backdrop that Plaintiff informed Kaur of her pregnancy in the summer of 2020.

9.    Ms. Thorogood informed Ms. Kaur that she was expecting a baby early in her pregnancy because Ms. Thorogood was feeling unwell and suffering from nausea and extreme fatigue.

10.    It was at this time—in the summer of 2020—that Plaintiff first asked Kaur for a reasonable accommodation in the form of a reduction in her workload.

11.    She made this request multiple times between August and November 2020, but each time, Defendants summarily denied her request *without engagement in any process regarding Plaintiff's condition or needs*.

12.     NYT required Ms. Thorogood to continue to work without accommodation and abjectly refused to consider the underlying health conditions relating to her pregnancy.

13.     With the requests to ease her workload ignored, Ms. Thorogood's fears came true, and she delivered her baby at the grave state of 28 weeks of gestation.

14.     Ms. Thorogood's newborn fought for her life and required critical care in the Neonatal Intensive Care Unit ("NICU") for four months.

15.     But even while actively in pre-term labor, Defendants continued to harass Plaintiff.

16.     Specifically, Ms. Kaur, knowing that Ms. Thorogood was in the hospital in pre-term labor, sent a meeting request to Ms. Thorogood asking her to assist with the transition of her duties while she would be out on leave.

17.     The environment at the NYT, the underpayment of wages, the failure to accommodate her difficult pregnancy and the ensuing terrifying early delivery of her infant, took a devastating toll on Plaintiff and her physical and mental health suffered tremendously.

18.     When Ms. Thorogood returned to work from her maternity leave in June 2021, the relentless mismanagement, harassment, and unreasonably long hours without proper compensation continued.

19.     Left with no other choice, that same month, Plaintiff resigned from her position.

20.     Having been constructively discharged, Ms. Thorogood brings this action to remedy disability and pregnancy discrimination, and for failure to accommodate, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

21.     Ms. Thorogood also brings this action to remedy discrimination in violation of the New York State Human Rights Law ("State Law"), N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law ("City Law"), New York City Administrative Code, § 8–101 et seq.

22.     Ms. Thorogood also brings this action to recover unpaid overtime in violation of the New York Labor Law, 12 N.Y.C.R.R. § 142-2.2 and Fair Labor Standards Act, 29 U.S.C. § 207.

23.     Ms. Thorogood seeks injunctive and declaratory relief, compensatory, liquidated and punitive damages, and all other appropriate equitable and legal relief pursuant to the ADA, the State Law, and the City Law.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over Plaintiff's ADA and FLSA claims pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 42 U.S.C. §20005(f)(3).

25.     The Court has supplemental jurisdiction over Plaintiff's State Law and City Law claims pursuant to 28 U.S.C. § 1367 because those claims closely relate to her ADA claims, having arisen out of a common nucleus of operative facts, such that all claims form part of the same case or controversy.

26.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants maintain operations in New York City and because a substantial part of the events or omissions giving rise to the claims occurred in New York City.

27.      Plaintiff timely filed this Complaint on March 11, 2022.

28.      All conditions precedent to maintaining this action have been fulfilled.  On November 3, 2021, Ms. Thorogood filed a charge against Defendant NYT alleging unlawful disability discrimination and failure to accommodate with the Equal Employment Opportunity Commission ("EEOC").  On December 15, 2021, Plaintiff received a notice from the EEOC informing her of the right to sue. (A true and correct copy of this notice is annexed hereto and marked as Exhibit "A").

## PARTIES

29.     Plaintiff, Farah Thorogood, is an individual who is and was, at all times relevant, a citizen of the state of New Jersey. Ms. Thorogood's permanent residence is in the State of New Jersey.

30.     Upon information and belief, Defendant, NYT is a citizen of the State of New York.

31.     Upon information and belief, Defendant Ruby Kaur is a citizen of the State of New York.

32.     At all relevant times herein, each of Defendants was an "employer" within the meaning of the ADA, the State Law, City Law, FLSA and NYLL.

33.     At all relevant times herein, Plaintiff was an "employee" within the meaning of the ADA, the State Law, and the City Law.

## FACTS

34.     Ms. Thorogood commenced work for Defendant NYT in December 2019 as a Global Mobility Analyst.

35.     In that role, Ms. Thorogood was a non-exempt employee who did not supervise other employees.

36.     At all times, Ms. Thorogood reported directly to her supervisor, Ruby Kaur.

37.     At the time of Ms. Thorogood's employment, Ms. Kaur was the Director of Compensation.

38.     Ms. Thorogood met with Ms. Kaur on a weekly basis as part of her regular duties.

39.     Due to the nature of her role, Ms. Thorogood also had standing weekly meetings with the Finance and Human Resources ("HR") Departments.

### Ms. Thorogood Worked in a Toxic Environment.

40.    From nearly the outset of her employment with the NYT, Plaintiff found herself working in a toxic and mismanaged workplace.

41.    Ms. Thorogood made multiple attempts to discuss better management of the workload and to streamline internal processes with Ms. Kaur.

42.    Ms. Kaur routinely rejected Ms. Thorogood's overtures.

43.    Ms. Kaur also routinely bullied, belittled, ridiculed, and dismissed Ms. Thorogood, as did HR and Finance employees, Fiona Cully and Helen Chung.  For example, it was common for Ms. Thorogood to be spoken to in a rude and aggressive manner designed to humiliate her in front of her team members.

**Defendants Failed to Compensate Ms. Thorogood for Overtime Hours Worked.**

44.    Though Ms. Thorogood's workload required Ms. Thorogood to work 60-70 hours per week (upwards of 12 hours per day and additional time spent working on weekends), Plaintiff did not report her actual hours worked to NYT for payment, because Ms. Kaur routinely harassed Ms. Thorogood about how long it took her to complete her work, despite Ms. Kaur's awareness that Ms. Thorogood was unduly burdened.

45.    In their weekly meetings, Ms. Thorogood explained to Ms. Kaur the details of her workload and the number of hours that she was working.

46.    During several of those meetings, Plaintiff explained to Ms. Kaur that she had been reporting fewer hours of overtime than she was actually working.

47.    Rather than direct Plaintiff to document the actual amount of time that she worked, Ms. Kaur complained that Plaintiff was already reporting too much overtime and she repeatedly communicated to Ms. Thorogood that she should complete her work more quickly.

48.    This was exactly the reason Plaintiff feared reporting over-time and drastically un-der-reported the amount of time she was working.

49.    In or around September 2020, NYT overhauled its time-keeping system, and in violation of state and federal time-keeping requirements, no longer tracked non-exempt employ-ees' time.

50.    Accordingly, NYT ceased paying Plaintiff (and other eligible employees similarly situated to Plaintiff) *any* over time despite that Ms. Thorogood worked approximately 60-70 hours per week.

**Defendants Summarily Dismiss Ms. Thorogood's Requests for a
Reasonable Accommodation.**

51.    In the summer of 2020 during a weekly video call, Ms. Thorogood informed Ms. Kaur of Ms. Thorogood's pregnancy.

52.    Plaintiff informed Ms. Kaur of her condition at only 8 weeks of gestation, because she was feeling unwell, and suffering from extreme nausea and fatigue.

53.    Notably, Ms. Thorogood was experiencing anxiety about her heavy workload, the stressful work environment, and the affect it could have on her pregnancy and the fetus.

54.    Ms. Thorogood's pregnancy and related conditions constitute qualified disabilities under the ADA, State Law and City Law.

55.    Because of her pregnancy and difficulty working so many hours while so ill, in or around August 2020, Ms. Thorogood asked Ms. Kaur for a reasonable accommodation in the form of a reduction in her workload.

56.    Ms. Kaur denied this request, as well as Ms. Thorogood's numerous other pleas for help spanning between August and November 2020.

57.     Ms. Thorogood specifically noted to Ms. Kaur that both she and her doctor feared that the workload would cause her to deliver her baby prematurely.

58.     Ms. Kaur still ignored her requests for accommodation.

59.     Upon information and belief, Ms. Kaur, in addition to dismissing Plaintiff's requests as nuisance, abdicated her legal responsibility by failing to inform HR, or any other member of NYT leadership of Plaintiff's requests for a reasonable accommodation.

60.     No one from NYT's office engaged in any process with Ms. Thorogood, at any time, about her accommodation request.

61.     Instead, in a flagrant violation of applicable law, Defendant summarily denied Plaintiff's repeated requests for an accommodation *without engagement in any process whatsoever*.

62.     It was business as usual—Ms. Kaur continued to require Ms. Thorogood to perform the roles and work load of several individuals with no accommodation to address her underlying health conditions relating to her pregnancy.

**Ms. Thorogood Delivers Her Daughter Prematurely, and
Suffers Severe Emotional Distress.**

63.     Ms. Thorogood's fears came true when she began pre-term labor on December 28, 2020, at the very fragile state of 28 weeks of gestation.

64.     Ms. Thorogood gave birth to a newborn who fought for her life and required critical care in the NICU for four months.

65.     But Ms. Kaur's unreasonable demands did not stop.

66.     Even *while* Ms. Thorogood was in labor, Ms. Kaur reached out to Ms. Thorogood, requesting that Ms. Thorogood attend a "hand over meeting."

67.    Ms. Thorogood's work emails continued unabated during Ms. Thorogood's maternity leave—while her daughter fought for her life in the NICU and then thereafter.

68.    The toll this took on Plaintiff's physical and mental health was devastating.

69.    Since her pregnancy, beginning with Defendant's callous denials of her repeated requests for an accommodation, Plaintiff has been suffering significant emotional distress, including suicidal thoughts, severe anxiety and depression, and a host of related physical and emotional symptoms.

70.    Not surprisingly, when she returned to work in June 2021, the relentless harassment and unreasonably long hours without proper compensation continued exactly as before her maternity leave, effectively resulting in the NYT constructively discharging Ms. Thorogood.

71.    Left with no other choice but to prioritize her health and well-being, on June 24, 2021, Plaintiff resigned from her position at the NYT.

### AS AND FOR A FIRST CAUSE OF ACTION
**Disability Discrimination Under the ADA**

72.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

73.    At all relevant times, Plaintiff was in a protected class under the Americans with Disabilities Act ("ADA") because she was pregnant and suffering from related medical conditions at the time that she sought an accommodation.

74.    Up to the time of the wrongful, unlawful, and discriminatory actions alleged herein, which were adverse employment actions, Plaintiff was fully qualified for her position.

75.    Given the circumstances surrounding Defendants' unlawful acts against Plaintiff, including failure to accommodate Plaintiff because of her pregnancy, there is a strong inference

that the true basis for the adverse employment actions against Plaintiff was disability discrimination.

76.     The hostile, offensive, demeaning and intimidating work environment created by Defendants as described herein, was unwelcome to Plaintiff, as it would reasonably be to any person, and severely or pervasively altered the terms, conditions and privileges of her employment.

77.     As a proximate result of Defendants' conduct, Plaintiff has been adversely affected in her employment and in her normal life's pursuits, was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated and demeaned because of Defendants' discriminatory conduct in violation of her human rights, all of which have impacted upon her well-being and the quality of her life.

78.     The facts contained herein constitute unlawful discrimination against Plaintiff by Defendants based on Plaintiff's disability in violation of Title I of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §12112(a), which, *inter alia*, states that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.

79.     As a direct and proximate result of Defendants' violation of the ADA, Defendants are liable to Plaintiff for damages, including punitive damages.

80.     Also as a direct and proximate result of Defendants' violation of Plaintiff's rights under the law, Defendants are liable to Plaintiff for costs and reasonable attorneys' fees.

81.     Defendants engaged in these discriminatory practices with malice and with reckless indifference, in the face of a perceived risk that its actions would violate Plaintiff's protected rights under the ADA, so that, in addition to the damages inflicted upon Plaintiff and in addition to all the other measures of relief which Plaintiff may be properly entitled herein, Defendants should

also be required to pay punitive damages for their discriminatory conduct, in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

82.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, and mental anguish, humiliation and damage to reputation as a result of Defendants' discriminatory practices unless and until this Court grants relief.

83.     Plaintiff, therefore, seeks compensatory damages in the First Cause of Action including, among other things, for loss of earnings and earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as punitive damages, reasonable attorneys' fees, the costs of this action and pre-judgment interest in this First Cause of Action.

## AS AND FOR A SECOND CAUSE OF ACTION
### State Law: Discrimination

84.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

85.     By the acts and practices described above, Defendants, in violation of the State Law, discriminated against Plaintiff on the basis of her disability.

86.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of Defendants' discriminatory practices.

## AS AND FOR A THIRD CAUSE OF ACTION
### City Law: Discrimination

87.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

88.     Plaintiff dutifully worked for Defendants until she was left with no other recourse but to terminate her employment with Defendants.

89.     By the acts and practices described above, Defendants, in violation of the City Law, discriminated against Plaintiff on the basis of her disability.

90.     Defendants engaged in discrimination with willful or wanton negligence, with reck-lessness, and/or with a conscious disregard of Plaintiff's rights, or conduct so reckless that it amounts to such disregard.

91.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary dam-ages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of Defendants' discriminatory practices.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Failure to Accommodate (ADA, State Law and City Law)

92.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

93.     This Count is brought under the ADA, 42 U.S.C. § 12101 *et seq*., State Law, and City Law.  Reference is made to the ADA, State Law and City Law in their entireties.

94.     At all relevant times, Plaintiff was an employee and person within the meaning of the ADA, State Law and City Law.

95.     At all relevant times, each of Defendants was and is an employer within the mean-ing of the ADA, State Law and City Law.

96.     Under the ADA (as well as the State Law and City Law), the term disability means, with respect to an individual: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment.  42 U.S.C. § 12102(2).

97.     At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA, State Law and City Law because: (a) she had a physical impairment that substantially limited one or more of her major life activities; (b) she had a record of such an impairment; and/or (c) she was regarded as having such an impairment.  To wit, at the time of the Defendants' discriminatory acts, Plaintiff was pregnant.

98.     Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation, as that term is defined under the ADA, State Law and City Law.

99.     Defendants committed unlawful employment practices and discriminated against Plaintiff because of a disability with respect to the terms, conditions and privileges of her employment, and also failed to accommodate her disability or engage in a process to determine whether an accommodation was available to her in the form of a reduction of her workload, ultimately leaving her with no other recourse but to terminate her employment.

100.    Defendants' conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination on the basis of disability under the ADA, State Law and City Law.

101.    Defendants' conduct was intentional and was carried out with malice and/or reckless indifference to Plaintiff's protected rights to be free from unlawful discrimination.

102.    As a direct and proximate consequence of Defendants' intentional and unlawful employment policies and practices, including Defendants' violation of Plaintiff's rights under the ADA, State Law and City Law, Plaintiff has suffered, and continues to suffer, monetary damages including, but not limited to, a loss of income, including past salary, future salary, and company-sponsored benefits and other direct costs, as well as emotional distress damages.  Plaintiff is entitled to recover monetary and other damages, punitive damages, interest (pre-judgment and post-

judgment), and attorneys' fees and costs from Defendants, under the ADA, State Law and City Law.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Violation of 12 NYCRR § 142-2.2, for Failure to Pay Overtime Under the New York State Labor Law**
**(Against all Defendants)**

103.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

104. At all times herein pertinent, Plaintiff was employed at the NYT as a global motility analyst with no employees who reported to her.

105. Plaintiff did not direct the work of any other employees.

106. Plaintiff's primary duties did not include the exercise of discretion and independent judgment with respect to any matters of significance.

107. Plaintiff did not perform business operations and had no power to hire or fire employees, and was not responsible for outsides sales of the NYT.

108. Plaintiff had no power to hire or fire employees.

109. During her time at the NYT, Plaintiff never held an administrative, executive or professional role, as defined by the New York State Labor Laws.

110. As set forth more fully above, Plaintiff regularly worked more than forty (40) hours per week, at the direction of Defendants.

111. Plaintiff should have been paid overtime for any hours worked in excess of forty hours per week.

112. Plaintiff only received 1-2 hours of overtime for most days worked, and was uncompensated for between approximately 10-20 hours of overtime per week.

113. Defendants knowingly, willfully, intentionally, and in bad faith, failed to pay overtime pay for hours worked in excess of forth (40) hours per week at the premium rate of one and one-half times the regular hourly rate, in violation of Articles 6 and 19 of the New York State Labor Law and 12 NYCRR § 142-2.2.

114. Because of Defendants' willful violation of the NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid overtime compensation, and an additional amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Violation of 29 U.S.C. § 207, for Failure to Pay Overtime**
**Under the Fair Labor Standards Act**

115. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

116. At all times herein pertinent, and in the course of her duties, Plaintiff was employed at the NYT as a global motility analyst with no employees who reported to her.

117. Plaintiff did not direct the work of any other employees. Plaintiff's primary duties did not include the exercise of discretion and independent judgment with respect to any matters of significance.

118. Plaintiff did not perform business operations and had no power to hire or fire employees.

119. As set forth more fully above, Plaintiff regularly worked more than forty (40) hours per week, at the direction of Defendants.

120. Plaintiff should have been paid overtime for any hours worked in excess of forty (40) hours per week.

121. Plaintiff only received 1-2 hours of overtime for most days worked, and was uncompensated for between approximately 10-20 hours of overtime per week.

122. All of the foregoing constituted knowing, intentional, willful and repeated violations of the Fair Labor Standards Act, so the applicable statute of limitations is three years pursuant to 29 U.S.C. § 255(a).

123. The Defendants herein knowingly, intentionally, and willfully violated 29 U.S.C. § 207 by failing to pay the Plaintiff overtime pay at the premium rate of one and one half times the Plaintiff's regular rate of pay.

124. Because of Defendants' willful violation of the FLSA, Plaintiff is entitled to recover from Defendants unpaid overtime compensation, and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, pursuant to FLSA, all in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a.   Declaring the acts and practices complained of herein to be violations of the ADA, the State Law, the City Law, the FLSA and the NYLL;

b.   Enjoining and permanently restraining these violations of the ADA, the State Law, the City Law, the FLSA and the NYLL.

c.   Directing Defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

d.   Directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' unlawful treatment of her, and making her

whole for all earnings and other benefits she would have received but for

Defendants' discriminatory treatment, including but not limited to wages,

including back pay and front pay, bonuses, and other lost benefits;

e.   Directing Defendants to pay Plaintiff compensatory damages, including

damages for emotional distress, humiliation, pain and suffering, and injury

to professional standing and reputation;

f.   Awarding Plaintiff the full amount of overtime under the New York Labor

Law, as well as an additional equal amount pursuant to the New York La-

bor Law;

g.   Awarding Plaintiff the full amount of unpaid overtime under the FLSA, as

well as an additional equal amount, because Defendants' actions were

willful and/or without a good faith basis;

h.   Directing Defendants to pay Plaintiff additional amounts as punitive dam-

ages;

i.   Awarding Plaintiff such interest as is allowed by law, and damages for any

adverse tax consequences stemming from an award;

j.   Awarding Plaintiff reasonable attorneys' fees and costs incurred in con-

nection with the prosecution of this action;

k.   Awarding such other and further relief as this court deems necessary and

proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
         March 11, 2022

Respectfully submitted,

_____/s/_____
Kimberly Kalmanson (KK2681)
Randi Cohen (RC4448), *of counsel*
Kalmanson Law Office, PLLC
One Liberty Plaza
165 Broadway, 23rd Floor
New York, New York 10006
TEL: (646) 759-3655
MOBILE: (718) 974-4500
FAX :(212) 808-0719
E:kim@kalmansonlawoffice.com

*Attorneys for Plaintiff Farah Thorogood*